# In the United States Court of Federal Claims

No. 25-1758
Filed: March 13, 2026

|  |
|---|
| **CECIL AVERY,** |
| *Plaintiff,* |
| **v.** |
| **THE UNITED STATES,** |
| *Defendant.* |

*Cecil Avery*, Union, KY, Pro Se.

*Collin T. Mathias*, Trial Attorney, with *William J. Grimaldi*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brett A. Shumate*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM ORDER AND OPINION

Rarely is a notable act of courage followed by decades of institutional friction. This case, however, has spent more than thirty years in the corridors of military bureaucracy. Pro se Plaintiff, Cecil Avery ("Mr. Avery"), a retired Technical Sergeant of the United States Air Force, initiated this action to challenge an Air Force Board for Correction of Military Records ("BCMR") decision denying his application for the Airman's Medal and the benefits that come with that award.[1] (Compl., ECF No. 1). The basis for Mr. Avery's claimed entitlement is a specific rescue operation where his supervisor's recommendation of the Airman's Medal was not approved. Despite the Air Force BCMR's prior corrections to Mr. Avery's record and a waiver of time limitations, the BCMR ultimately denied his request to revisit that declination. Mr. Avery asserts that the BCMR's denial was arbitrary, capricious, and a violation of his Fifth Amendment rights. The United States moves to dismiss Mr. Avery's Complaint, asserting that the doctrine of *res judicata* bars his claims due to previous adjudication on these same operative facts. (Mot. to Dism., ECF No. 9). For the reasons set forth below, the United States' Motion is **GRANTED**.

---

[1] "The President may award a decoration called the 'Airman's Medal' . . . to any person who, while serving in any capacity with the Air Force or Space Force, distinguishes himself by heroism not involving actual conflict with an enemy." 10 U.S.C. § 9280.

On February 1, 1990, at Kunsan Air Base, Republic of Korea, Mr. Avery entered a burning restaurant to rescue a civilian.[2] (Compl. at 2). Based on this act, Mr. Avery's supervisor recommended him for the Airman's Medal. (*Id.*). According to Mr. Avery, while the Air Force has not disputed the underlying nature of the act, the administrative processing of the recommendation was interrupted by several personnel transitions and permanent station changes. (*Id.* at 2–3). From 1991 to 2025, Mr. Avery sought administrative relief through at least three applications to the Air Force BCMR. (*Id.* at 3; Mot. to Dism. Ex. A, ECF No. 9-1). In a 1994 proceeding, Mr. Avery alleges that the BCMR granted partial relief by voiding various adverse administrative entries in Mr. Avery's record. (Compl. at 3). Despite these corrections and an apparent waiver of the time limitations regarding the medal's submission, the BCMR denied his request. (*Id.*). As Mr. Avery characterizes it, this decision rested on the premise that administrative remedies had not been properly exhausted, a finding he contested as arbitrary and capricious. (*Id.*).

In 2015, Mr. Avery submitted an Application for Correction of Military Record that the Air Force BCMR deemed a reconsideration of Mr. Avery's prior applications. (Mot. to Dism. Ex. C, ECF No. 9-3). That September, the BCMR denied Mr. Avery's request for reconsideration, finding that he failed to present newly discovered, relevant evidence that was unavailable during his original application. (*Id.*). The BCMR stated that the mere reiteration of previously addressed facts, uncorroborated personal observations, or new arguments based on the existing record were insufficient to reopen a case. (*Id.*). Consequently, the Air Force deemed this decision final and notified Mr. Avery that any further correspondence on the matter would be filed without action, leaving judicial review as his sole remaining avenue for relief. (*Id.*).

More recently, on September 4, 2025, the Air Force BCMR issued another denial of Mr. Avery's request for reconsideration. (Mot. to Dism. Ex. B, ECF No. 9-2). In its decision, the BCMR noted that the application merely rehashed previously adjudicated facts and uncorroborated observations rather than presenting the "newly discovered relevant evidence" required for reopening a case. (*Id.*). By declaring that any future correspondence regarding this matter will be "filed without action," the BCMR again iterated that Mr. Avery's administrative remedies had been effectively exhausted. (*Id.*).

Mr. Avery brought this suit, alleging that the BCMR failed to account for Mr. Avery's supervising sergeant's testimony, which he argues established that the failure to process the award was an institutional error rather than an applicant deficiency. (Compl. at 3). Mr. Avery

---

[2] In deciding a motion to dismiss, the Court presumes the truth of the complaint's allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, the Court's review is not strictly limited to the pleadings; it may also examine outside evidence to verify jurisdiction or to assess the plausibility of the claims presented. *Land v. Dollar*, 330 U.S. 731, 735 (1947) (subject matter jurisdiction); *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (failure to state a claim). Accordingly, the facts herein are drawn from Mr. Avery's Complaint, (ECF No. 1), and the BCMR records provided by the United States, (ECF Nos. 9-1, 9-2, 9-3). The Court notes that while Mr. Avery is under no obligation to do so at this stage, he has not submitted independent records regarding his service or BCMR proceedings, nor has he challenged the validity of the United States' attachments.

asserts that the Airman's Medal carries a constitutionally protected property interest under the Fifth Amendment, as 10 U.S.C. § 8991 provided for a 10% increase in retired pay for enlisted members credited with extraordinary heroism.[3] (*Id*. at 3–4). Having retired in May 1999, Mr. Avery calculates his monetary loss at approximately $57,000, representing the withheld retirement pay increases and accrued interest. (*Id.* at 4). He contends that the Air Force BCMR's refusal to credit the testimony and the subsequent denial of the medal constitute a deprivation of property without due process and an abuse of agency discretion. (*Id.* (citing Administrative Procedure Act, 5 U.S.C. § 706(2)(A))). Consequently, Mr. Avery seeks a judicial declaration setting aside the BCMR's decision, an order directing the award of the Airman's Medal, and a judgment for back pay and prospective retirement benefits. (*Id.*). Fatal to these claims is that this is not Mr. Avery's first time in this Court's trenches.

On November 14, 2019, nearly six years before this suit, Mr. Avery filed a substantively similar action predicated upon the September 2015 administrative denial. *Avery v. United States*, No. 19-1774C, 2020 WL 3960341 (Fed. Cl. July 13, 2020) ("*Avery I*") (Hertling, J.). In his initial action, his complaint also challenged the Air Force BCMR's refusal to award him the Airman's Medal; the Court ruled that it lacked subject-matter jurisdiction to consider his claims and that they were nonjusticiable. *Id.* at *3; *see also* Case No. 19-1744 (Complaint, ECF No. 1 ("*Avery I* Compl.")). The Court reasoned that because the statutes and regulations governing the Airman's Medal and its associated retirement pay increase are discretionary rather than money-mandating, they do not trigger the waiver of sovereign immunity required under the Tucker Act. *Avery I*, 2020 WL 3960341 at *4. The Court determined that the decision to grant military honors involves "professional military judgment" beyond the Court's competence to review, and any potential procedural or due process claims were either time-barred by the six-year statute of limitations or fell outside the Court's specific jurisdictional mandate. *Id.* (citing *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988)).

Relying on his prior litigation, the United States moves to dismiss Mr. Avery's current Complaint asserting that the doctrine of *res judicata* bars Mr. Avery's claims.[4] (Mot. to Dism. at 3–11 (citing generally *Avery I*)). A motion to dismiss for failure to state a claim upon which

---

[3] The statute governing retired pay increases was renumbered from 10 U.S.C. § 8991 to 10 U.S.C. § 9361. Despite this change in citation, the 10% increase in retired pay for enlisted members who demonstrate extraordinary heroism remains in effect.

[4] Because *res judicata* is an affirmative defense, courts generally analyze it under Rule 12(b)(6) for failure to state a claim rather than as a jurisdictional bar under Rule 12(b)(1). *See, e.g., Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (identifying res judicata as an affirmative defense); *Milgroom v. United States*, 651 F. App'x 1001, 1006 (Fed. Cir. 2016) (declining to reach "preclusion grounds" after resolving the appeal on "jurisdictional grounds"). Here, the United States moves to dismiss for lack of jurisdiction under RCFC 12(b)(1) based on the prior jurisdictional bar. (*See* Mot. to Dism. (citing *Avery I*)). While these doctrines often conflate when a prior, incurable jurisdictional defect serves as the basis for preclusion, the Court treats them as independent hurdles and begins its inquiry under the RCFC 12(b)(6) lens before addressing the remaining jurisdictional deficiencies.

relief can be granted is governed by Rule 12(b)(6). This rule requires dismissal when a complaint fails to state a "claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). At the pleading stage, the plausibility standard does not impose a probability requirement; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to support the plaintiff's allegations. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). Under Rule 12(b)(6), a claim must be dismissed "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

The Court is mindful that a pro se plaintiff like Mr. Avery may lack the formal expertise to frame legal issues with the exacting precision of an attorney. *See Roche v. U.S. Postal Serv.*, 828 F.2d 1555, 1558 (Fed. Cir. 1987). Even so, pro se litigants must allege "plausible" facts sufficient to satisfy both the requirements of subject-matter jurisdiction and the necessary elements of a claim as a matter of law for which relief may be granted. *See Stephanatos v. United States*, 306 F. App'x 560, 564 (Fed. Cir. 2009) (stating that arguments should be "fleshed out."). This standard necessarily implicates the doctrine of *res judicata*. *See Palafox Street Assoc., L.P. v. United States*, 114 Fed. Cl. 773, 780 (2014) (citing *Chisolm v. United States*, 82 Fed. Cl. 185, 193 (2008), *aff'd*, 298 Fed. App'x 957 (Fed. Cir. 2008) (noting that because "claim preclusion rests on a final judgment on the merits, it can quite properly and naturally be raised via a merits-based RCFC 12(b)(6) motion[.]")).

"*Res judicata*," or "a matter already judged," traditionally refers to two similar legal effects: (1) claim preclusion and (2) issue preclusion, also called "collateral estoppel." *Baker v. General Motors Corp.*, 522 U.S. 222, 233 n.5 (1998). "Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana v. United States*, 440 U.S. 147, 153 (1979). Issue preclusion typically pertains to a matter that was *actually* litigated, while claim preclusion forecloses matters arising out of the same facts that *could have* been litigated but were not. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). While both doctrines may apply, the Court only addresses the broader doctrine of claim preclusion.

"Claim preclusion applies when '(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first.'" *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1268 (Fed. Cir. 2008) (quoting *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)). It is undisputed that the parties in both suits are Mr. Avery and the United States. (*Compare* Compl. (naming Mr. Avery as Plaintiff and United States as defendant) with *Avery I* Compl. (same)). Therefore, the first element is satisfied.

As to whether *Avery I* proceeded to a final, valid judgment on the merits, the Court finds that it did. Mr. Avery's claims were dismissed for lack of subject matter jurisdiction as well as being nonjusticiable and outside the statute of limitations. *Avery I*, 2020 WL 3960341 at *1–5. In many scenarios, "[d]ismissals for lack of jurisdiction do not reach the merits of a claim and therefore are [typically] without prejudice to a plaintiff filing a new suit in a court with proper jurisdiction to address the merits." *Goad v. United States*, 46 Fed. Cl. 395, 398 (2000) (citation omitted); *see also Richmond, Fredericksburg and Potomac RR Co. v. United States*, 27 Fed. Cl. 275, 286 (1992) (citation omitted) ("A dismissal for lack of subject matter jurisdiction, however,

4

typically signifies a dismissal without prejudice."). While a dismissal for lack of subject-matter jurisdiction is not a judgment on the merits, it nonetheless carries *res judicata* effects regarding specific jurisdictional issues actually decided. *Watson v. United States*, 349 Fed. App'x 542, 544 (Fed. Cir. 2009) (citations omitted) ("A dismissal for lack of jurisdiction triggers the application of the doctrine of *res judicata* as to the jurisdictional issue."); *eVideo Inc. v. United States*, 136 Fed. Cl. 164, 172 (2018), *aff'd*, 748 F. App'x 327 (Fed. Cir. 2019) ("The Court's previous dismissal for lack of subject-matter jurisdiction triggers application of the doctrine of *res judicata*, unless plaintiffs can show that they allege additional facts in the present complaint to cure the jurisdictional defects in their prior complaint.") (citations omitted). "That is, a jurisdictional determination may have a preclusive effect to bar matters previously litigated if the plaintiff fails to allege additional claims to cure the jurisdictional defect in a subsequent court action." *Tindall v. United States*, 176 Fed. Cl. 339, 344 (2025), *aff'd*, No. 2025-1845, 2026 WL 60186 (Fed. Cir. Jan. 8, 2026) (citations omitted). With the substance of Mr. Avery's claims remaining identical to his previous filings, the decision in *Avery I* is considered final for *res judicata* purposes. *See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("It has long been the rule that principles of [finality] apply to jurisdictional determinations—both subject matter and personal.").

With an eye toward negating the third element, Mr. Avery argues that *res judicata* does not apply in these circumstances because he believes this action is not based on the same operative facts as *Avery I*. (Pl.'s Resp. at 1–3, ECF No. 10). Specifically, he argues that while the prior case addressed the denial of a decoration, the current claim seeks to enforce the Air Force BCMR's subsequent favorable determinations in Dockets 91-00655 and BC-1994-02702, which he characterizes as formally recognizing his heroism and waiving relevant time limitations. (*Id.* at 2). Mr. Avery contends that these decisions, coupled with new evidence of administrative exhaustion, constitute "curable defects" that allow this case to proceed despite the prior dismissal. (*Id.* at 2–4). These facts, however, do not distinguish Mr. Avery's claims from those previously litigated.

The Court finds the third element of the *res judicata* analysis satisfied, as the operative transactional facts in the current Complaint are the same as those determined in *Avery I*. The inquiry into whether two claims involve the same transactional facts must be conducted "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Phillips/May Corp.*, 524 F.3d at 1271 (quoting Restatement (Second) of Judgments § 24(2) (1982)). In identifying which facts are transactional, courts "have defined 'transaction' in terms of a 'core of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based on the same, or nearly the same, factual allegations.'" *Barajas v. United States*, 154 Fed. Cl. 318, 323 (2021) (citing *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1363 (Fed. Cir. 2000)). Despite his assertions to the contrary, Mr. Avery's claims rest entirely on the premise that the Air Force improperly withheld the Airman's Medal and the supplemental benefits associated with the award. (Compl. at 1–3). This was the same grievance that formed the basis of *Avery I*. (*Avery I* Compl.); Case No. 19-1744 (Resp. to Mot. to Dism., ECF No. 13).

The Court recognizes that this analysis is complicated by the BCMR's September 4, 2025 letter, which raises the question of whether its refusal to reopen the case altered the finality of the underlying administrative action. (*See* Mot. to Dism. Ex. B). To determine this, the Court must determine whether this sequence of events falls within the applicable six-year statute of limitations. 28 U.S.C. § 2501 (delineating six-year statute of limitations). For purposes of military pay actions, the statute of limitations begins to run when "an appropriate military board either finally denies such a claim or refuses to hear it." *Chambers v. United States,* 417 F.3d 1218, 1224 (Fed. Cir. 2005) (citation omitted). In determining whether an agency action is final, "[t]he core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). "A petition for reconsideration by the [BCMR] does not restart the statute of limitations unless there is a showing of new evidence or changed circumstances." *Smalls v. United States*, 298 F. App'x 994, 996 (Fed. Cir. 2008) ("The statute cannot be tolled, and it was not restarted by [plaintiff's] submission of new evidence when he filed for reconsideration.") (citing *Interstate Com. Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 278–79 (1987)). Therefore, a motion for reconsideration does not divest a prior agency adjudication of its finality unless the agency chooses to reopen the record to consider new and material evidence. *Van Allen v. United States*, 70 Fed. Cl. 57, 63 (2006) (citations omitted), *aff'd*, 236 F. App'x 612 (Fed. Cir. 2007). Following this logic, the Air Force's latest refusal to reopen the case is not a new agency action, but instead a final word on an old one. And because the subject final agency action was a part of *Avery I*, the Court finds that these cases rest on the same set of transactional facts and that *res judicata* applies. A different conclusion would create an incentive for circular litigation, where the mere filing of a meritless motion for reconsideration could perpetually extend the timeframe for judicial review.

The "new legal developments" Mr. Avery cites, specifically the Air Force BCMR decisions from 1991 and 1994, predate the litigation in *Avery I* by decades. (*See* Pl.'s Resp. at 3). Because these facts were within Mr. Avery's knowledge when he initiated *Avery I*, his failure to include them in that matter bars him from asserting them now. Under the doctrine of claim preclusion, a plaintiff is barred from litigating not only issues that were raised, but also those that *could have been raised* in a prior action arising from the same transactional nucleus of facts. *See, e.g., Mars Inc. v. Nippon Conlux Kabushiki–Kaisha*, 58 F.3d 616, 619–20 (Fed. Cir. 1995) ("It is well established that a party may not split a cause of action into separate grounds in successive lawsuits; instead a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together."). Because the underlying factual basis for this claim remains identical to the 2020 case, Mr. Avery cannot "cure" a jurisdictional defect by repackaging old administrative records as new evidence.

It bears repeating that, regardless of the BCMR's recent correspondence, Mr. Avery's underlying claims remain nonjusticiable and beyond the jurisdictional reach of this Court, just as they did in *Avery I*. In addition to its *res judicata* arguments, the United States alternatively argues that the Court could dismiss based on failure to establish subject matter jurisdiction. (Mot. to Dism. at 12–13). The Court agrees with the United States and finds that Mr. Avery's present Complaint fails to cure the same fatal defects identified in *Avery I*. (*See* Compl.). While Mr. Avery invokes the Tucker Act, the Administrative Procedure Act, and the Fifth Amendment, he fails to identify an applicable "money-mandating" statute necessary to waive sovereign

immunity. (Pl.'s Resp. at 3–10); *United States v. Testan*, 424 U.S. 392, 400 (1976) (noting that to establish jurisdiction, a plaintiff must identify a money-mandating statute or regulation that "can fairly be interpreted as mandating compensation by the Federal Government"). Mr. Avery's reliance on the statute regarding the computation of retirement pay is inapplicable and therefore misplaced. (Pl.'s Resp. at 8 (citing 10 U.S.C. § 9361)). While the statute uses the word "shall," the 10% retirement pay increase is conditioned entirely upon the Secretary of the Air Force crediting a member with extraordinary heroism. 10 U.S.C. § 9361. The Court finds no support, and Mr. Avery offers none, for the proposition that an act recognized in a prior BCMR proceeding is equivalent to a formal credit for extraordinary heroism for compensation purposes.

Furthermore, 10 U.S.C. § 9280 confirms that awarding the Airman's Medal is a highly discretionary act. Without the actual award of the medal or a specific secretarial determination of heroism, there is no "money-mandating" trigger to invoke this Court's jurisdiction. As *Avery I* explained, the statutes governing the Airman's Medal and the associated increase in retirement pay are purely discretionary and rooted in professional military judgment; they do not create a cognizable property interest under the Takings Clause, nor do they mandate the payment of money. *Avery I*, 2020 WL 3960341 at *3; 10 U.S.C. § 9280(a); *Shelden v. United States*, 742 F. App'x 496, 500 (Fed. Cir. 2018) (per curiam) (citations omitted); *see also CRV Enters. v. United States*, 626 F.3d 1241, 1249 (Fed. Cir. 2010) ("It is well established that 'only persons with a valid property interest at the time of the taking are entitled to compensation.'" (quoting *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001)).

Furthermore, Mr. Avery's claims remain nonjusticiable because the evaluation of "extraordinary heroism" is a matter of executive discretion that falls outside the Court's special field of competence. *Avery I*, 2020 WL 3960341 at *3 (citing *Voge*, 844 F.2d at 780). Mr. Avery's objection, while ostensibly aimed at improving Air Force administrative procedures, is a transparent attempt to compel a specific military decoration and an accompanying increase in pay. (Pl.'s Resp. at 10). Under *Voge v. United States*, military promotion and decoration decisions are fundamentally nonjusticiable. 844 F.2d at 780. These decisions involve subjective professional judgments and matters of military expertise that the judiciary is ill-equipped to review. *See Avery I*, 2020 WL 3960341 at *4 (citing Exec. Order No. 13830, 83 Fed. Reg. 18,191 § 6(a) (Apr. 20, 2018); AFI 36- 3203 ¶ 7.11). The BCMR's decision to waive a timeline does not create a ministerial duty to grant the award; it merely permits the application to be considered. *See Buholtz v. United States,* No. 2024-1009, 2024 WL 4647890, at *3 (Fed. Cir. Nov. 1, 2024) (explaining that while a board may waive certain administrative requirements, such a waiver does not "confer any presumption or advantage" regarding the ultimate merits of the application).

Stated plainly, the final authority to determine whether an act meets the high threshold for military honors remains an internal agency function immune from judicial second-guessing. This is because the Secretary's determination is conclusive for all purposes, leaving the Court with no manageable standards to adjudicate what is essentially a subjective military honor. *See* 10 U.S.C. § 9361. While Mr. Avery contends that the nature of his action is limited to the recovery of retirement benefits, such a characterization is logically circular. (*See* Compl. at 4; Pl.'s Resp. at 10). Determining his eligibility for benefits would lead the Court into a forbidden assessment of his military honors (or lack thereof). *See Voge*, 844 F.2d at 779–81. Consistent

7

with established precedent, the Court declines the invitation to substitute its own judgment for that of the armed services.

The Court acknowledges Mr. Avery's commendable service; however, his heroism does not exempt his claims from fundamental procedural requirements. Having satisfied the three elements for claim preclusion, *res judicata* precludes Mr. Avery's claims. Even if *Avery I* had no preclusive effect, Mr. Avery has failed to demonstrate that this Court possesses the requisite jurisdiction to hear his claims. For the stated reasons, the United States' Motion to Dismiss, (ECF No. 9), is **GRANTED** pursuant to RCFC 12(b)(6) and RCFC 12(b)(1). The Clerk is **DIRECTED** to enter judgment accordingly. The Clerk is also **DIRECTED TO REJECT** any future submissions in this case unless they comply with the Court's rules regarding post-dismissal submissions.[5]

**IT IS SO ORDERED.** [6]



_David A. Tapp_
DAVID A. TAPP, Judge

---

[5] The Court clarifies that this provision does not act as an anti-filing injunction or a sanction. *Allen v. United States*, 88 F.4th 983, 989 (Fed. Cir. 2023) (holding that courts must provide pro se plaintiffs with notice and opportunity to be heard before issuing an anti-filing injunction). Plaintiff is not enjoined from proper post-dismissal filings in this case, nor is he required to seek leave before filing future actions in this Court. *See id.* This provision is a mechanism to reject non-compliant filings in the above-captioned action once dismissed.

[6] Reply briefs are not mandatory. RCFC 7.2(b)(2) (stating a reply brief *may* be filed within fourteen days of response). Finding that a reply brief would not aid the Court in deciding this matter, this Opinion is rendered based solely on the United States' Motion, (ECF No. 9), and Mr. Avery's Response, (ECF No. 10).